FILED

JUL 26 2011

CLERK, U.S. DISTRICT COURT
NEWPORT NEWS VA

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

ALONZO RICE, SR.,

      Plaintiff,

v.                                                    Case No.: 4:10cv122

FOOD LION, LLC, et al.,

      Defendants.

## OPINION AND ORDER

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

## I. PROCEDURAL BACKGROUND

This is a personal injury action, removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

The plaintiff initiated this action by filing his complaint in the Circuit Court of the City of Newport News, Virginia, and serving it on the defendant's registered agent on August 24, 2010. ECF No. 1. The defendant filed its answer in the state court on September 13, 2010, and removed the action to this Court on September 16, 2010. Id. The parties consented to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and Rule 73 of the Federal Rules of Civil Procedure on October 13, 2010. ECF No. 9.

The defendant filed a motion for summary judgment on February 28, 2011. ECF No. 14. The Court denied that motion on March 25, 2010. ECF No. 27.

On March 29 and 30, 2011, the Court held a jury trial in this matter at the federal courthouse in Newport News, Virginia. At the close of the plaintiff's evidence, the defendant moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, which the Court denied. See Trial Tr. 104-10, Mar. 29-30, 2011, ECF No. 33. At the close of all evidence, the defendant again moved for judgment as a matter of law pursuant to Rule 50(a), which the Court also denied. See id. at 119-26. The case was then submitted to the jury. Following several hours of deliberation, the jury indicated that it was unable to reach a verdict. The Court discharged the jury without a verdict.

The Court then invited the parties to make any oral motions they deemed appropriate at that time. The defendant renewed its motion for judgment as a matter of law pursuant to Rule 50(b), and the plaintiff moved for a new trial pursuant to Rule 59. The Court directed the parties to file written motions and supporting, responsive, and rebuttal briefs in accordance with Local Civil Rule 7(F). On April 15, 2011, the plaintiff filed his written motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, ECF No. 35, and the defendant filed its written renewed motion for judgment as a matter of law pursuant to Rule 50(b) of

- 2 -

the Federal Rules of Civil Procedure, ECF No. 39. Each party filed a brief opposing the other party's motion on April 18, 2011. ECF Nos. 42-43. Neither party filed a rebuttal brief.

Having carefully reviewed the motion papers submitted by both sides and all the evidence of record, the Court finds this matter ripe for determination on the papers without any further hearing, pursuant to Local Civil Rule 7(J) and Rule 78(b) of the Federal Rules of Civil Procedure.

## II. STANDARD FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50

Rule 50 provides that, after a jury trial and upon a renewed motion for judgment as a matter of law, the Court may "direct the entry of judgment as a matter of law" in favor of the moving party where "the court finds that a reasonable jury would not have a legally sufficient basis to find" in the non-moving party's favor. Fed. R. Civ. P. 50(a)&(b).

The standard under Rule 50 is that judgment as a matter of law must be granted "if, under the governing law, there can be but one reasonable conclusion as to the verdict." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Benner v. Nationwide Mut. Ins. Co., 93 F.3d 1228, 1234 (4th Cir. 1996) ("Judgment as a matter of law is proper 'when without weighing the credibility of the evidence there can be but one reasonable conclusion as to the proper judgment.'") (quoting Singer v. Dungan, 45 F.3d 823, 826 (4th Cir. 1995)). "If reasonable minds could

- 3 -

differ as to the import of the evidence, however," judgment as a matter of law should not be granted.  See Anderson, 477 U.S. at 250-51.

> If the defendant in a run-of-the-mill civil case moves for [judgment as a matter of law] based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Id. at 252 (quoting Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1874)) (emphasis in original).[1]

_____

[1] Judgment as a matter of law may be appropriate even where the Court has previously denied a motion for summary judgment based on abstracts of the same evidence.  See Malone v. Microdyne Corp., 26 F.2d 471, 475 n.4 (4th Cir. 1994).  Substantively, the "reasonable jury" rule applied in the context of a Rule 50 motion for judgment as a matter of law is "very close" to the "genuine dispute" test used in adjudicating motions for summary judgment.  See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 745 n.11 (1983).  "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while [judgment as a matter of law] motions are made at trial and decided on the evidence that has been admitted."  Id.  Nevertheless, "trial judges are formally encouraged for cogent reasons of judicial economy ordinarily to submit all but the plainest cases for jury verdict subject to the reserved ruling . . . ."  Colonial Lincoln-Mercury, Inc. v. Musgrave, 749 F.2d 1092, 1098 n.3 (4th Cir. 1984).

"[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.  In doing so, however, the court must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1349-50 (4th Cir. 1995); Goedel v. Norfolk & W. Ry. Co., 13 F.3d 807, 810 (4th Cir. 1994).  "If there is 'substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party, the motion should be denied . . . .'"  Martin, 48 F.3d at 1350 (quoting Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir. 1980)); see also Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 279 (4th Cir. 1999) ("A Rule 50(b) motion should be granted if a district court determines, without weighing the evidence or considering the credibility of witnesses, that substantial evidence does not support [a] jury's finding [in favor of the non-moving party].").

## III.  FACTUAL BACKGROUND

This case was tried before a jury on March 29 and 30, 2011. The plaintiff presented testimony by eight witnesses:  (1) Alonzo Rice, Sr., the plaintiff; (2) Alonzo Rice, Jr., the plaintiff's 13-year old son; (3) Brandon Marsh, the plaintiff's nephew, who drove

- 5 -

the plaintiff and his son to the grocery store that day; (4) Althea Lambert, the plaintiff's wife; (5) Patricia Whipple, a produce manager at the Newmarket Mall Food Lion store; (6) Ronald Ward, a manager on duty at the Newmarket Mall Food Lion store; (7) Ronald Hurst, the store manager of the Newmarket Mall Food Lion store; and (8) Dr. Michael Hooker, the plaintiff's orthopedic surgeon, testifying by deposition.   The defendant presented only one witness, recalling Ms. Whipple to present additional testimony. Two exhibits were admitted into evidence: (1) a surveillance video from the Newmarket Mall Food Lion store depicting the produce area for a period of 18 minutes leading up to the plaintiff's fall; and (2) a set of medical bills documenting the plaintiff's medical treatment and related damages.

The facts of this case are largely undisputed.   On a hot day in July 2009, the plaintiff's nephew, Mr. Marsh, drove the plaintiff and his son to the Newmarket Mall Food Lion store to shop for groceries.   Once in the store, Mr. Marsh separated from the plaintiff and his son, looking around on his own.   The plaintiff and his son went to the deli, at the front of the store, placed an order, and then walked to the back of the store, through the produce section, so the plaintiff could get a drink of water from a water fountain located at the back of the store.   After getting his drink of water, the plaintiff turned around and began walking back to the deli at the front of the store, his son trailing behind him.

While walking near a display of summer fruit in the produce area, the plaintiff slipped and fell down onto his left knee, causing a transverse fracture of the patella. After his fall, the plaintiff and other witnesses observed a smashed piece of fruit, possibly a plum, nearby.[2] The evidence suggests that the plaintiff's knee may have landed directly on a fruit pit, causing his patella to split into multiple fragments. Ultimately, the plaintiff underwent surgery to reposition and wire his patella back together. Notwithstanding this reconstructive surgery, the plaintiff has suffered a permanent impairment of his knee with the likely prospect of accelerated joint degeneration and increased pain in the future as a result of his injury.

## IV. ANALYSIS

Under Virginia law, "negligence cannot be presumed from the mere happening of the accident. The burden is upon the plaintiff to prove that the accident was due to the negligence of the defendant as a proximate cause." Murphy v. J.L. Saunders, Inc., 121 S.E.2d 375, 378 (Va. 1961). In doing so, "[i]t is incumbent upon the plaintiff to show why and how the accident happened. If that is left to conjecture, guess or random judgment, the plaintiff is not entitled to recover." Id.

---

[2] Various witnesses observed that the smashed piece of fruit was brown or purple in color, surmising that it was a plum, while others suggested that it might be a grape or some cherries. The specific type of fruit is not material.

In Colonial Stores Inc. v. Pulley, 125 S.E.2d 188 (Va. 1962), the Supreme Court of Virginia concisely stated the rules applicable to slip-and-fall cases such as this one:

> The [store owner] owed the [customer] the duty to exercise ordinary care toward [him] as its invitee upon its premises.  In carrying out this duty it was required to have the premises in a reasonably safe condition for [his] visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to [him], but was, or should have been, known to the [store owner].

Id. at 190.

There is no evidence in the record to suggest that Food Lion or one of its employees placed the offending piece of unidentified fruit on the floor where the plaintiff slipped and fell.  See id.; Winn-Dixie Stores, Inc. v. Parker, 396 S.E.2d 649, 651 (Va. 1990) (distinguishing Memco Stores, Inc. v. Yeatman, 348 S.E.2d 228 (Va. 1986)).[3]  It is therefore "incumbent upon the plaintiff to prove that the defendant knew that it was there, or, to show that the [fruit] had been there long enough that the defendant ought to have known of its presence, and, in either event, failed to remove it

---

[3] In Yeatman, the Supreme Court of Virginia held a store owner liable for negligence where it positioned a succulent plant in such a manner that its moist leaves could and did fall into an aisle, without any further intervention, creating a hazard to customers using the aisle.  See Yeatman, 348 S.E.2d at 231.  Winn-Dixie found Yeatman inapposite to a case involving a customer who slipped and fell on a snap bean that likely fell to the floor as a result of the intervening act of another customer rather than the store owner or its employees.  See Winn-Dixie, 396 S.E.2d at 651.

within a reasonable time or to warn [him] of the danger." <u>See</u> <u>Colonial Stores</u>, 125 S.E.2d at 190.

None of the testimony presented at trial established, or even suggested, that the defendant in this case knew that the piece of fruit upon which the plaintiff slipped was on the floor, nor that it had been there long enough that the defendant should have known of its presence.  The plaintiff himself testified that he did not see the fruit until after he had already fallen, he did not know where it originated, and he did not know how long it had been on the floor.  Trial Tr. 83-85, 95-96, Mar. 29-30, 2011, ECF No. 33. The plaintiff's son likewise testified that he did not see the fruit until after his father fell, despite having walked through the area just a few minutes earlier.  <u>Id.</u> at 16, 19.

Ms. Whipple, produce manager at the Newmarket Mall store, acknowledged in her testimony that the plaintiff's fall occurred near a table containing a display of loose summer fruit, including plums.  <u>Id.</u> at 43-44; <u>see also</u> <u>id.</u> at 64-65, 68 (testimony of store manager that plums were stocked on opposite side of table adjacent to plaintiff's fall).  She also acknowledged that, although Food Lion employees stack loose fruit so it doesn't roll off the display tables, customers are known to rearrange the fruit, sometimes knocking it to the floor.  <u>Id.</u> at 43-44, 50-51, 53-54, 115.  Ms. Whipple further testified that it was her practice to pick up such fallen fruit immediately when she saw it.  <u>Id.</u> at 50, 118.  Ms.

Whipple specifically testified that she was in the vicinity of the summer fruit display within a few minutes prior to the plaintiff's fall, that she was no more than ten feet away with a clear and unobstructed view of the area where he fell, and that she did not see anything on the floor.  Id. at 46-48, 53, 115-17.

None of the other witnesses who testified at trial were present when the plaintiff fell.

A review of the surveillance video, admitted into evidence as Plaintiff's Exhibit 1, confirms that Ms. Whipple indeed was in the vicinity in the minutes before the plaintiff's fall occurred.  This surveillance video was recorded by a camera mounted on the wall or ceiling at the rear of the store, above the produce area, documenting the eighteen minutes leading up to the plaintiff's fall.[4]  At 16:30:00, Ms. Whipple could be seen stocking peppers along a "wet/dry wall" on the left-hand side of the screen.[5]  At approximately 16:34:08, Ms. Whipple moved from the wet/dry wall to the far side of what appears to be a display of tomatoes on a table fashioned to look like a two-wheeled wooden vendor's cart, mid-way

---

[4] The video is time-stamped in 24-hour military-time format. The video begins at 16:30:00 and continues until 16:53:19.  The plaintiff's fall occurs at approximately 16:48:10.  At trial, the video was played from the start through the plaintiff's fall.  In considering this motion, the Court has limited its review to this same time period, but a glance at the final few seconds of the video suggests that the remainder largely consists of the plaintiff lying on the floor with store employees and customers gathered around him, presumably to investigate or render assistance.

[5] See also Trial Tr. 40-41, Mar. 29-30, 2011, ECF No. 33.

between the wet/dry wall and the summer fruit display table next to which the plaintiff fell.[6]   At 16:34:30, Ms. Whipple moved back to the wet/dry wall.   At 16:35:55, Ms. Whipple returned to the far side of the tomato table, where her feet could be seen moving as she stocked the far side of the display table.   Four minutes later, at 16:40:08, Ms. Whipple moved back to the wet/dry wall, where she remained until approximately 16:47:00, when she moved on to attend to a potato display table visible in the lower right-hand side of the screen.[7]

At 16:47:08, the plaintiff (dressed in a white t-shirt, dark-colored shorts, and a dark-colored baseball cap) made his first appearance in the surveillance video, walking along the wet/dry wall on the left hand side of the screen as he moved from the deli to the water fountain at the rear of the store.   A few seconds later, the plaintiff's son (dressed in a red t-shirt and shorts) followed after him, walking around the opposite side of the tomato table, skirting the area where the plaintiff later fell.   At 16:47:55, the plaintiff could be seen walking back toward the front of the store, with his son trailing behind him.   At 16:48:10, the plaintiff can be seen falling near the summer fruit display table.

The surveillance video is grainy, and the camera's view of the area where the plaintiff fell is partially obstructed by light

---

[6] See also Trial Tr. 40, Mar. 29-30, 2011, ECF No. 33.
[7] See also Trial Tr. 39, Mar. 29-30, 2011, ECF No. 33.

fixtures.  As a result, the area where the plaintiff fell cannot be seen in sufficient detail to identify anything on the floor, when it might have been placed there, or by whom.  Throughout the eighteen minute period, several other customers can be seen walking through the aisle where the plaintiff fell without any difficulty, including two customers who walked through what appears to be the very same spot between 16:45:40 and 16:45:50, less than two and a half minutes before the plaintiff's fall.

On a similar record, the Supreme Court of Virginia concluded that

> [t]here is no evidence in this case that the [store owner] knew of the presence of the [foreign object] on the floor, nor is there any showing of the length of time it may have been there.  It is just as logical to assume that it was placed upon the floor an instant before the [customer] struck it as it is to infer that it had been there long enough that the [store owner] should, in the exercise of reasonable care, have known about it.

Colonial Stores, 125 S.E.2d at 190; see also Winn-Dixie, 396 S.E.2d at 651.

The plaintiff argues in his opposition brief that Colonial Stores and Winn-Dixie are distinguishable based on the existence of surveillance video in this case.  But, as described above, the surveillance video provides no additional insight into whether a piece of fruit was present on the floor where the plaintiff fell, how it got there, how long it had been there, or whether the defendant otherwise knew or should have known of its presence.  The

evidence is just as inconclusive with the surveillance video as it would be in its absence.

The plaintiff cites a Fourth Circuit opinion, Thomason v. Great Atlantic & Pacific Tea Co., 413 F.2d 51 (4th Cir. 1969), to suggest that the defendant may be held liable on the theory that its method of display—loose fruit stacked at an angle on a display table—inherently provides it with constructive notice of any fruit that might roll off a display table when disturbed by a customer. In Thomason, the Fourth Circuit held that a store may be held liable if "it is reasonably foreseeable that a dangerous condition is created by, or may arise from, the means used to exhibit commodities for sale." Id. at 52. But the Thomason "method of display" theory of proving constructive knowledge in a slip-and-fall case was expressly overruled by the Supreme Court of Virginia in Winn-Dixie Stores, Inc. v. Parker, 396 S.E.2d 649 (Va. 1990). See id. at 651 & n.3; see also Rodgers v. Food Lion, Inc., 103 F.3d 119, 1996 WL 673802, at *2 n.* (4th Cir. Nov. 22, 1996) (unpublished per curiam table decision) (recognizing overruling of Thomason and applying Winn-Dixie).

The plaintiff also relies on a Supreme Court of Virginia opinion, O'Brien v. Everfast, Inc., 491 S.E.2d 712 (Va. 1997), to suggest that judgment as a matter of law is inappropriate in this case because "there are conflicts in the evidence." Pl.'s Br. in Opp'n 4, ECF No. 43. But O'Brien is inapposite. In O'Brien, a

- 13 -

fabric store customer was injured when she was struck by one of three heavy bolts of fabric that had been stood on end and leaned against a cutting table, contrary to a store safety policy. O'Brien, 491 S.E.2d at 713, 714.   Another customer, who had selected four bolts of fabric to be cut, affirmatively testified that a store employee, who was cutting one of the four bolts at the time of the accident, knew that the customer had selected more than one bolt of fabric to be cut, and that the remaining three bolts leaning against an adjoining cutting table were in plain view.   Id. A store accident report further stated that the bolt of fabric that injured the plaintiff had been leaned against the cutting table either by "[t]he salesperson or customer."   Id.   The Supreme Court of Virginia held that these facts were sufficient to permit a jury to reasonably find that the store employee had actual knowledge of the potential danger posed by the three bolts of fabric.   Id. at 714.   But unlike O'Brien, there is no conflicting evidence in this case.   Indeed, there is no evidence whatsoever to suggest that the defendant in this case had actual or constructive knowledge that the fruit upon which the plaintiff slipped had fallen to the floor, making Colonial Stores and Winn-Dixie clearly more apposite.

As noted above, it is the plaintiff who bears the burden of proving that the defendant had actual knowledge of the fruit on the floor, or that it had been there long enough that the defendant, in the exercise of ordinary care, should have known about it and

- 14 -

removed it.   Based upon the testimony and exhibits admitted into evidence at trial, the Court concludes that a reasonable jury would not have a legally sufficient basis to find in favor of the plaintiff under the standards set forth by the Supreme Court of Virginia in its <u>Murphy</u>, <u>Colonial Stores</u>, and <u>Winn-Dixie</u> decisions.

Accordingly, the Court will grant the defendant's renewed motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure (ECF No. 39).   The Clerk shall be directed to enter judgment in favor of the defendant in this case.

## V.  **RULE 59 MOTION FOR NEW TRIAL**

Rule 50(c)(1) provides that:

> If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed.  The court must state the grounds for conditionally granting or denying the motion for a new trial.

Fed. R. Civ. P. 50(c)(1).

Accordingly, the plaintiff's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure (ECF No. 35) will be conditionally granted.   This Court has determined that judgment as a matter of law is appropriate because no reasonable jury could return a verdict for the plaintiff on the evidence in the record.  If this judgment is vacated or reversed on appeal, the appellate court's disposition must necessarily rely on a

determination that, to the contrary, a reasonable jury _could_ return a verdict in favor of the plaintiff on the evidence in the record.

## VI. CONCLUSION

For the foregoing reasons, the defendant's renewed motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure (ECF No. 39) is GRANTED and the Clerk is DIRECTED to enter judgment in favor of the defendant in this case.

Pursuant to Rule 50(c)(1), the plaintiff's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure (ECF No. 35) is CONDITIONALLY GRANTED for the reasons stated above.


IT IS SO ORDERED.


UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

July 26, 2011


- 16 -